UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

LORENZO MARTINEZ,

             Plaintiff,

    v.                                                    20-CV-00773-LJV
                                                              ORDER
DR. MCQUEEN (E.C.M.C.), *et al.*,

             Defendants.

_____

## INTRODUCTION

The *pro se* plaintiff, Lorenzo Martinez, is a prisoner confined at the Sing Sing

Correctional Facility ("Sing Sing").  He asserts claims under 42 U.S.C. § 1983 and

alleges that the defendants violated his Eighth Amendment rights through their

deliberate indifference to his serious medical needs.  Docket Item 1.  Martinez has paid

the $400.00 in civil filing fees.  *See* Docket Item 5.

Because Martinez is a "prisoner," *see* 28 U.S.C. § 1915A(c), the Court screens

the complaint under 28 U.S.C. § 1915A(a).  For the reasons that follow, the plaintiff's

claim may proceed against the defendants in their individual capacities, but not against

them in their official capacities.

## DISCUSSION

Section 1915A "provide[s] an efficient means by which a court can screen for and

dismiss legally insufficient claims."  *Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007)

(citing *Shakur v. Selsky*, 391 F.3d 106, 112 (2d Cir. 2004)).  The court shall dismiss a

complaint in a civil action in which a prisoner seeks redress from a governmental entity, or an officer or employee of a governmental entity, if the court determines that the action (1) fails to state a claim upon which relief may be granted or (2) seeks monetary relief against a defendant who is immune from such relief. *See* 28 U.S.C. § 1915A(b)(1)-(2). Generally, the court will afford a *pro se* plaintiff an opportunity to amend or to be heard prior to dismissal "unless the court can rule out any possibility, however unlikely it might be, that an amended complaint would succeed in stating a claim." *Abbas*, 480 F.3d at 639 (citation omitted); *see also Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) ("A *pro se* complaint is to be read liberally. Certainly the court should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." (quoting *Gomez v. USAA Fed. Sav. Bank,* 171 F.3d 794, 795 (2d Cir. 1999))). But leave to amend pleadings may be denied when any amendment would be "futile." *Id.*

## I.     SCREENING THE COMPLAINT

In evaluating the complaint, the court accepts all factual allegations as true and draws all inferences in the plaintiff's favor. *See Larkin v. Savage*, 318 F.3d 138, 139 (2d Cir. 2003) (per curiam); *King v. Simpson*, 189 F.3d 284, 287 (2d Cir. 1999). "Specific facts are not necessary," and the plaintiff "need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (alteration in original) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)); *see also Boykin v. Keycorp*, 521 F.3d 202, 213 (2d Cir. 2008) ("[E]ven after *Twombly*, dismissal of a *pro se* claim as insufficiently pleaded is appropriate only in the most unsustainable of cases."). Although "a court is obliged to

2

construe [*pro se*] pleadings liberally, particularly when they allege civil rights violations,"
*McEachin v. McGuinnis,* 357 F.3d 197, 200 (2d Cir. 2004), even pleadings submitted
*pro se* must meet the notice requirements of Rule 8 of the Federal Rules of Civil
Procedure, *see Wynder v. McMahon*, 360 F.3d 73, 76 (2d Cir. 2004).

Martinez has sued physicians at the Erie County Medical Center ("ECMC") and
officials of the New York State Department of Corrections and Community Supervision
("DOCCS") for failing to provide constitutionally reasonable medical care between
September 2015 and April 2018.  More specifically, Martinez has sued ECMC
physicians McQueen, "John Doe #1," and "John Doe #2"; Carl J. Koenigsmann, former
DOCCS Deputy Commissioner and Chief Medical Officer; Joseph A. Noeth,
Superintendent of Attica Correctional Facility ("Attica"); and S. Michalek, Attica Nurse
Administrator.  *See* Docket Item 1 at 2.  A liberal reading of the complaint tells the
following story.

At some point in September 2015, Martinez reported "an injury suffered while
exercising (complete rupture of the ligament connecting [his] left bicep to the shoulder)"
to the medical staff at Attica.  *Id.* at 4.  The injury "caus[ed] excruciating pain, [and] loss
of range [of motion], strength[,] and movement [in his] left arm."  *Id.*  Martinez was
"immediately" sent to ECMC, "where [he] was examined by several doctors" and had X-
rays taken of his arm.  *Id.*  "The doctors were very optimistic" that the injury could be
"repair[ed] . . . via a surgery."  *Id.*

"Within the next ten days, [Martinez] was referred to see a specialist, Doctor
McQueen."  *Id.*  Defendants Dr. McQueen, Dr. John Doe #1, and Dr. John Doe #2
initially informed Martinez that he had ruptured a ligament in his bicep and that they

planned to "repair it through . . . surgery." *Id.* at 5.  But fifteen minutes later, they asked

Martinez the term of his prison sentence.  *Id.*  After Martinez informed them of his 75-

year term, the physicians "changed [their] medical determination" and told Martinez that

surgery was not appropriate for Martinez's injury because it was "not . . . life

threatening."  *Id.*  Instead, the physicians stated, Martinez should treat his injury with

therapy and exercise.  *Id.*  The ECMC doctors did not order an MRI.  *Id.* at 8.

Martinez subsequently completed twelve weeks of physical therapy, but the

therapy did not alleviate his pain.  *Id.* at 5.  The pain became "excruciating" and

rendered Martinez unable to "lift anything over 10 pounds with his left arm, exercise

properly, [or] sleep."  *Id.* at 6.  When Martinez complained to Attica staff, including

defendants Michalek and Noeth, they refused his requests to see a different physician.

*Id.* at 5-6.  Martinez then wrote two letters to defendant Koenigsmann, but Koenigsmann

did not answer either inquiry.  *Id.* at 6, 18, 21.  "Feeling abandoned," Martinez grieved

the issue in April 2017.  *Id.* at 6, 12-14.  The Grievance Committee denied the claim,

and defendant Noeth affirmed that decision in May 2017.  *Id.* at 6, 15.  The Central

Office Review Committee also affirmed the denial in September 2018.  *Id.* at 7, 17.

After Martinez was transferred to Sing Sing in July 2017, he was evaluated by a

new specialist, who "commented that '[the] former doctors' failure to repair [Martinez's]

bicep rupture was a *shame to medicine practicing*.'"  *Id.* at 7 (emphasis in original).

After an August 2017 MRI revealed a tear in Martinez's left arm, as well as tears in his

shoulder and rotator cuff, Martinez underwent surgery on his left shoulder in April 2018.

*Id.*  The surgeon informed Martinez that his "bicep was not surgically reparable because

of the delay" and that he would "have to live for the rest of [his] life with the deformity."

4

*Id.* Martinez continues to experience weakness and numbness in his left arm, and he is unable to lift more than 20 pounds. *Id.*

Martinez seeks $5,500,000 in damages. *Id.* at 10.

## II.    SECTION 1983 CLAIMS

"To state a valid claim under 42 U.S.C. § 1983, the plaintiff must allege that the challenged conduct (1) was attributable to a person acting under color of state law, and (2) deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States." *Whalen v. County of Fulton*, 126 F.3d 400, 405 (2d Cir. 1997) (citing *Eagleston v. Guido*, 41 F.3d 865, 875-76 (2d Cir. 1994)).  "Section 1983 itself creates no substantive rights; it provides only a procedure for redress for the deprivation of rights established elsewhere." *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993) (citing *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 816 (1985)).

To establish liability against a private actor under section 1983, a plaintiff must allege that the individual was "jointly engaged with state officials in the prohibited action" or was a "willful participant in joint activity with the [s]tate or its agents." *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 152 (1970); *see also Zemsky v. City of New York*, 821 F.2d 148, 151 (2d Cir. 1987) ("A person who is not a government official or employee acts under color of state law for purposes of [s]ection 1983 when 'he has acted together with or has obtained significant aid from state officials' or has similarly engaged in conduct attributable to the state." (quoting *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982))).

To establish liability against a prison official under section 1983, a plaintiff must allege that official's personal involvement in the alleged constitutional violation; it is not

enough to assert that the defendant is a "link[ ] in the prison['s] chain of command."  *See*

*McKenna v. Wright*, 386 F.3d 432, 437 (2d Cir. 2004); *Colon v. Coughlin*, 58 F.3d 865,

873 (2d Cir. 1995).  Moreover, the theory of *respondeat superior* is not available in a

section 1983 action.  *See Hernandez v. Keane*, 341 F.3d 137, 144 (2d Cir. 2003).  But a

supervisory prison official can be found to be personally involved in an alleged

constitutional violation in one of several ways:

> (1) the defendant participated directly in the alleged constitutional violation,
> (2) the defendant, after being informed of the violation through a report or
> appeal, failed to remedy the wrong, (3) the defendant created a policy or
> custom under which unconstitutional practices occurred, or allowed the
> continuance of such a policy or custom, (4) the defendant was grossly
> negligent in supervising subordinates who committed the wrongful acts, or
> (5) the defendant exhibited deliberate indifference to the rights of inmates
> by failing to act on information indicating that unconstitutional acts were
> occurring.

*Colon*, 58 F.3d at 873 (citing *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994)).

## A.    Official-Capacity Claims

 "The Eleventh Amendment bars suits against states and their officials unless the

state consents to suit, Congress abrogates the state's immunity, or the case falls within

the *Ex parte Young* exception [for prospective injunctive relief]."  *Nat'l Ass'n for*

*Advancement of Colored People v. Merrill*, 939 F.3d 470, 475 (2d Cir. 2019).  "New

York has not waived its immunity, nor has Congress abrogated it."  *Li v. Lorenzo*, 712 F.

App'x 21 (2d Cir. 2017) (summary order) (citing *Trotman v. Palisades Interstate Park*

*Comm'n*, 557 F.2d 35, 38-40 (2d Cir. 1977); *Dube v. State Univ. of N.Y.*, 900 F.2d 587,

594 (2d Cir. 1990)).

Martinez has sued all named defendants in both their official and unofficial

capacities and has demanded monetary damages.  *See* Docket Item 1 at 4.  The claims

against defendants in their official capacities are barred by the Eleventh Amendment and accordingly dismissed without leave to amend which would be "futile."  *See Cuoco v*, 222 F.3d at 112.

### B.      Deliberate Indifference to Medical Need (Eighth Amendment Claim)

A claim of inadequate medical care rises to the level of a constitutional violation only when a defendant was deliberately indifferent to the plaintiff's serious medical needs.  *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976); *see also Ross v. Kelly*, 784 F. Supp. 35, 43-44 (W.D.N.Y.), *aff'd*, 970 F.2d 896 (2d Cir. 1992).  "A serious medical condition exists where 'the failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain.'"  *Harrison v. Barkley*, 219 F.3d 132, 136 (2d Cir. 2000) (quoting *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998)).

An isolated failure to provide medical treatment, without more, is generally not actionable unless the surrounding circumstances suggest a degree of "deliberate[ness]," rather than inadvertence, in the failure to render meaningful treatment.  *See Gill v. Mooney*, 824 F.2d 192, 196 (2d Cir. 1987).

> Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment.  Medical malpractice does not become a constitutional violation merely because the victim is a prisoner.  In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

*Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996) (quoting *Estelle*, 429 U.S. at 106 & n.14).  At the same time, "while 'mere medical malpractice' is not tantamount to deliberate indifference, certain instances of medical malpractice may rise to the level of

deliberate indifference," such as "when the malpractice involves culpable recklessness, *i.e.*, an act or a failure to act by the prison doctor that evinces a conscious disregard of a substantial risk of serious harm." *Id.* (citation omitted).

Here, Martinez alleges that defendants Dr. McQueen, Dr. John Doe #1, and Dr. John Doe #2 diagnosed a ligament rupture, recommended a certain course of treatment, and later changed their plan for nonmedical reasons—that is, bias resulting from his lengthy prison term—providing alternative treatment that resulted in "excruciating" pain and lasting injury.  Furthermore, all that allegedly occurred while Martinez was incarcerated at Attica and not free to choose other providers, *see* Docket Item 1 at 4.  And Martinez alleges that another physician, after ordering additional diagnostic testing denied by the ECMC defendant physicians, advised him that the ECMC physicians provided inadequate treatment and care.  These claims are sufficient, at this early stage, to allege that the defendant physicians, while acting "together with . . . state officials" at Attica, *Zemsky*, 821 F.2d at 151, were aware of a serious medical condition and chose not to provide reasonable treatment.

Martinez also alleges that he informed defendants Noeth, Michalek, and Koenigsmann of this ongoing denial of care, and they also chose not to intervene or otherwise provide him with adequate care.  Those claims suffice to allege that these officials "after being informed of the violation through a report or appeal, failed to remedy the wrong."  *Colon*, 58 F.3d at 873.  In other words, Martinez also has adequately alleged that the defendant supervisory DOCCS officials were personally involved in the claimed constitutional violation.

**C.    John Doe Defendants**

With respect to the claims against "Dr. McQueen," "Dr. John Doe #1," "Dr. John Doe #2," and "S. Michalek," and pursuant to *Valentin v. Dinkins*, 121 F.3d 72 (2d Cir. 1997) (per curiam), DOCCS shall ascertain their full names and shall provide an address where these defendants may be served.  DOCCS need not undertake to defend or indemnify these individuals at this juncture.  This order merely provides a means by which Martinez may name and properly serve the defendants as instructed by the Second Circuit in *Valentin*.

DOCCS shall produce the information specified above regarding the identities of "Dr. McQueen," "Dr. John Doe #1," "Dr. John Doe #2," and "S. Michalek" **within 35 days of the date of this order**.  The information shall be forwarded to the Court's *Pro se* Unit, United States District Court, 2120 Kenneth B. Keating Federal Building, 100 State Street, Rochester, New York 14614.  Once this information is provided, Martinez's complaint shall be deemed amended to reflect the names of the defendants in place of "Dr. McQueen," "Dr. John Doe #1," "Dr. John Doe #2," and "S. Michalek," and the United States Marshals Service shall effect service.

**CONCLUSION**

For the reasons stated above, Martinez's claim against the defendants in their official capacities are dismissed 28 U.S.C. § 1915A(b).  His claim against the defendants in the individual capacities for deliberate indifference to his medical needs, however, may proceed.

**ORDER**

In light of the above, IT IS HEREBY

ORDERED that Martinez's claim against the defendants in their official capacities is dismissed; and it is further

ORDERED that DOCCS shall provide the Court with the names and addresses of "Dr. McQueen," "Dr. John Doe #1," "Dr. John Doe #2," and "S. Michalek"—or a statement of written reasons why such identification is improper or impossible—**within 35 days of the date of this order**; and it is further

ORDERED that DOCCS's failure to comply with this order may result in sanctions under Rule 37 of the Federal Rules of Civil Procedure; and it is further

ORDERED that the Clerk of Court shall cause the United States Marshal to serve copies of the summons, complaint, and this order upon defendants Noeth and Koenigsmann, as well as "Dr. McQueen," "Dr. John Doe #1," "Dr. John Doe #2," and "S. Michalek" (once identified), without the plaintiff's payment therefor, unpaid fees to be recoverable if this action terminates by monetary award in the plaintiff's favor; and it is further

ORDERED the Clerk of Court shall forward a copy of this order by email to Michael Russo, Assistant Attorney General in Charge, Buffalo Regional Office <Michael.Russo@ag.ny.gov>; and it is further

ORDERED, under 42 U.S.C. § 1997e(g), that once served, the defendants shall answer the complaint; and it is further

ORDERED that Martinez shall notify the Court in writing if his address changes. The Court may dismiss the action if Martinez fails to do so.


SO ORDERED.

Dated:       July 31, 2020
             Buffalo, New York


                                          */s/ Hon. Lawrence H. Vilardo*
                                          LAWRENCE J. VILARDO
                                          UNITED STATES DISTRICT JUDGE