UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

LORENZO MARTINEZ,

       Plaintiff,

  v.                                           20-CV-773-LJV-MJR
                                                  DECISION & ORDER

THOMAS DUQUIN, et al.,

       Defendants.

---

On June 22, 2020, the *pro se* plaintiff, Lorenzo Martinez, commenced this action under 42 U.S.C. § 1983, alleging that the defendants violated his Eighth Amendment rights when they were deliberately indifferent to his serious medical needs. Docket Item 1. More specifically, Martinez says that after he injured his shoulder at the Attica Correctional Facility ("Attica") in 2015 and was sent to the Erie County Medical Center ("ECMC"), the seven defendants—four members of ECMC's medical staff (Dr. Thomas Duquin, Dr. Kaori Tanaka, and physician's assistants Joseph Treanor and Elizabeth Hall[1]); Attica Superintendent Joseph A. Noeth; Attica Nurse Administrator Sandra Michalek; and New York State Department of Corrections and Community Supervision ("DOCCS") Deputy Commissioner and Chief Medical Officer Dr. Carl J. Koenigsmann—"deliberately fail[ed] to provide [him] with adequate medical treatment."[2] *Id.* at ¶¶ 9-18,

---

[1] Although both the *Valentin* response from DOCCS, Docket Items 8 and 9, and the official case docket refer to "Elizabeth Cohen," her name is now Elizabeth Hall, *see* Docket Item 82.

[2] Martinez sued the defendants in both their official and individual capacities. Docket Item 1 at ¶ 1. But this Court dismissed Martinez's official capacity claims under 28 U.S.C. § 1915A(b). Docket Item 7 at 10. So only his individual capacity claims are addressed here.

21-33, 40; *see also* Docket Items 8 and 9 (*Valentin* response from DOCCS and this Court's order directing the Clerk of the Court to update the caption with defendants' names based on that response).  According to Martinez, the medical staff at ECMC failed to provide him with constitutionally adequate care, while the officials at Attica and DOCCS failed to adequately address the situation after he reported it.  *See generally* Docket Item 1.

This Court referred the case to United States Magistrate Judge Michael J. Roemer for all proceedings under 28 U.S.C. § 636(b)(1)(A) and (B).  Docket Item 18. On September 1, 2022, Noeth, Michalek, and Dr. Koenigsmann (the "state defendants")—moved for summary judgment, Docket Item 76; two days later, three of the other defendants—Dr. Duquin, Dr. Tanaka, and Hall (the "ECMC defendants")—did the same, Docket Item 82.[3]  After Martinez responded to those motions, Docket Items 89, 90, and 91, the ECMC defendants replied, Docket Item 92.[4]  On September 29, 2023, Judge Roemer issued a Report and Recommendation ("R&R") recommending that the defendants' motions should be granted.  Docket Item 95.

Martinez objected to the R&R.  Docket Item 98.  The ECMC defendants then responded to the objections,[5] Docket Item 101, and Martinez replied, Docket Item 104.

---

[3] Treanor, the fourth ECMC employee sued, was never formally served and has not appeared in this action.  Docket Item 19; *see* Docket Item 95 at 33 n.8.  The Court addresses the claims against him below.  *See infra* Section III.

[4] The state defendants did not reply.

[5] The state defendants did not respond to Martinez's objections, and the time to do so has passed.  *See* Docket Item 100.  Nonetheless, this Court finds that Martinez has not raised any colorable objections and grants the state defendants' motion to dismiss for the reasons explained below.

2

A district court may accept, reject, or modify the findings or recommendations of a magistrate judge. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3). The court must review de novo those portions of a magistrate judge's recommendation to which a party objects. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3).

This Court has carefully and thoroughly reviewed the R&R; the record in this case; the objections, response, and reply; and the materials submitted to Judge Roemer. Based on that de novo review, the Court accepts and adopts Judge Roemer's recommendation to grant the defendants' motions for summary judgment.

### **LEGAL PRINCIPLES**

Under Federal Rule of Civil Procedure 56, a court appropriately grants summary judgment only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "The movant"—that is, the party seeking summary judgment—"has the burden of showing that there is no genuine issue of fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). The movant may satisfy its burden by relying on evidence in the record, "including depositions, documents, . . . [and] affidavits," Fed. R. Civ. P. 56(c)(1)(A), or by "point[ing] to an absence of evidence to support an essential element of the non[-]moving party's claim," *Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir. 1995) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)); *see* Fed. R. Civ. P. 56(c)(1)(B).

Once the movant has satisfied its initial burden, the non-moving party "must come forward with specific facts showing that there is a genuine" dispute of material fact—that is, that a "rational trier of fact [could] find for the non-moving party" on the

"record taken as a whole." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citations, emphasis, and internal quotation marks omitted). If the non-moving party fails to do so, the court will grant summary judgment. *See Celotex*, 477 U.S. at 322-23; Fed. R. Civ. P. 56(a). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248.

In deciding a motion for summary judgment, "[t]he court must view the evidence in the record in the light most favorable to the non-moving party" and "draw[] all reasonable inferences in that party's favor." *Abdu-Brisson v. Delta Air Lines, Inc.*, 239 F.3d 456, 465-66 (2d Cir. 2001). But "conclusory statements, conjecture, or speculation by the party resisting the motion will not defeat summary judgment." *Kulak v. City of New York*, 88 F.3d 63, 71 (2d Cir. 1996). Instead, under Federal Rule of Civil Procedure 56, the party opposing a motion for summary judgment must "properly support an[y] assertion[s] of fact" by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A); *Celotex*, 477 U.S. at 324. And "[w]hile evidence produced by the party opposing a summary judgment motion need not be in a form that would be admissible at trial, its content must nonetheless be admissible." *Davis-Bell v. Columbia Univ.*, 851 F. Supp. 2d 650, 675-76 (S.D.N.Y. 2012) (internal citations and internal quotation marks omitted); *see also* Fed. R. Civ. P. 56(c)(4) (requiring that "[a]n affidavit or declaration used to support or oppose a [summary judgment] motion must be made on personal knowledge,

4

set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated").

"In a *pro se* case, the Court must . . . liberally construe the party's pleadings 'to raise the strongest arguments that they suggest.'" *Castro-Ramirez v. U.S. Citizenship & Immigr. Servs.*, 2014 WL 2440696, at *3 (S.D.N.Y. May 30, 2014) (quoting *McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir.1999)). "Nonetheless, a *pro se* litigant must still be held to the normal requirements of summary judgment, and 'bald assertion[s],' unsupported by evidence, will not overcome a motion for summary judgment." *Id.* at *4 (alteration in original) (quoting *Carey v. Crescenzi*, 923 F.2d 18, 21 (2d Cir. 1991)).

## **DISCUSSION**[6]

"The Eighth Amendment prohibits the infliction of 'cruel and unusual punishments'"—"includ[ing] punishments that 'involve the unnecessary and wanton infliction of pain.'" *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998) (first quoting U.S. Const. amend. VIII, then quoting *Gregg v. Georgia*, 428 U.S. 153, 173 (1976)). "In order to establish an Eighth Amendment claim arising out of inadequate medical care, a prisoner must prove 'deliberate indifference to [his] serious medical needs.'" *Id.* (alteration in original) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). "Every deliberate indifference claim must satisfy an objective and a subjective component: 'First, the alleged deprivation must be, in objective terms, sufficiently serious.  Second,

---

[6] The Court assumes the reader's familiarity with the facts alleged in the complaint, Docket Item 1; the parties' statements of fact filed in connection with the motions for summary judgment, Docket Items 77 and 82-4; Docket Item 89 at 28-30; Docket Item 90 at 21-23; Docket Item 91 at 25-28, and Judge Roemer's analysis in the R&R, Docket Item 95.  It refers to those facts only as necessary to explain its decision.

5

the defendant must act with a sufficiently culpable state of mind.'" *Rodriguez v. Gusman*, 2023 WL 219203, at *1 (2d Cir. Jan. 18, 2023) (quoting *Chance*, 143 F.3d at 702).

"[A] prison official cannot be found liable under the Eighth Amendment . . . unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Darby v. Greenman*, 14 F.4th 124, 128 (2d Cir. 2021) (alterations in original) (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). "'[A]n official's failure to alleviate a significant risk that he should have perceived but did not' does not meet this standard." *Id.* (quoting *Farmer*, 511 U.S. at 838); *see also Rodriguez*, 2023 WL 219203, at *1 ("The defendant must have been actually aware of a substantial risk that serious inmate harm would result." (alterations, citation, and internal quotation marks omitted)).

The R&R found that Martinez failed to produce evidence sufficient to allow a reasonable jury to find that he had satisfied either the objective or the subjective element of his deliberate indifference claim against any defendant. Docket Item 95 at 18-29. More specifically, Judge Roemer determined that although "a reasonable jury . . . could conclude that [Martinez's] alleged deprivation of care related to a sufficiently serious[] condition," Martinez had not produced evidence sufficient for a reasonable jury to find "that he was deprived adequate care." *Id.* at 21 & n.6. And Judge Roemer further found that "even if [Martinez] could prove the objective element of his claim, he cannot show that a[ny d]efendant acted with deliberate indifference, or, in other words, a sufficiently culpable state of mind" to satisfy the subjective element. *Id.* at 27. Finally,

6

Judge Roemer recommended that even if this Court determined "that an underlying constitutional violation did occur," the state defendants nonetheless should "be granted summary judgment based on lack of personal involvement." *Id.* at 33.

Martinez objects to each of these recommendations. *See* Docket Item 98. But for the reasons that follow, his objections lack merit.

I. **DELIBERATE INDIFFERENCE**

Martinez says that Judge Roemer erred in finding that there was no deprivation of care—the objective element—because the judge: (1) ignored Martinez's claim that the failure to order an MRI and perform surgery permanently damaged his left arm, *see* Docket Item 98 at ¶¶ 9, 21-23; (2) overlooked medical opinions suggesting that Martinez required surgery, including the opinion of Dr. Holder, who treated him at the Sing Sing Correctional Facility after he was transferred from Attica, *see id.* at ¶¶ 15-17, 24; Docket Item 95 at 7; and (3) gave undue weight to the opinion of the ECMC defendants' medical expert, Dr. Ilya Voloshin, after denying Martinez's earlier motion for funds to hire his own medical expert, *see* Docket Item 98 at ¶¶ 13-14, 18. And he argues that Judge Roemer also erred in finding that the defendants did not act with a sufficiently culpable state of mind—the subjective element—because Martinez "established that th[e] denial [of adequate care] was based on the discrimination displayed by the [d]efendants toward [Martinez] because of [his] life sentence." *See id.* at ¶¶ 9, 23-24.

A. **Hall and Dr. Tanaka**

As an initial matter, this Court notes that while Martinez styles his objections as applying to all defendants, his assertions generally are focused on facts related to Dr. Duquin, the physician who allegedly changed his assessment about the need for

7

surgery after learning of Martinez's life sentence. *See* Docket Item 98 at ¶¶ 9, 23-24; *see* Docket Item 95 at 4-7 (summarizing those facts). Indeed, Martinez does not directly dispute Judge Roemer's finding that physician's assistant Hall and "possibly" Dr. Tanaka evaluated Martinez during his initial visit to ECMC's Emergency Department and "recommended" that he "follow up with ECMC's Orthopaedics / Sports Medicine clinic the following week." Docket Item 95 at 3-4; *see* Docket Item 98. Nor does Martinez point to any evidence that disputes the R&R's finding that Martinez "did not return to the Emergency Department at ECMC again" nor "receive any additional care or treatment from . . . Hall or Dr. Tanaka."[7] Docket Item 95 at 4; *see* Docket Item 98.

Instead, Martinez objects—without citing any specific facts—that Hall and Dr. Tanaka should have "performed a[n] MRI" to diagnose his injury at the initial visit and that Judge Roemer should have found there to be a genuine issue of material fact in that regard. *See* Docket item 98 at ¶¶ 12, 21. But Hall and Dr. Tanaka recommended prompt follow-up with a specialist, and "[i]t is well-established that mere disagreement

---

[7] Martinez does say that at some point after he was denied pain medication at Attica, he "was sent back to see Dr. Tanaka and the other [d]efendants at ECMC"; that he "informed them about the denial of the medication"; and that they did nothing. Docket Item 98 at ¶ 18. But he does not say that he specifically saw Dr. Tanaka. *See id.* In any event, Martinez does not dispute Judge Roemer's finding that Martinez "lacks any evidence to demonstrate that he was actually denied prescribed medication, []or that any of the [d]efendants in this action were involved in or responsible for such a denial." Docket Item 95 at 28-29. Instead, he says that Judge Roemer "failed to recognize . . . that *in his complaint*, [Martinez] clearly state[d] that he was prescribed pain medication . . . [and] was prevented from receiving th[at] medication." Docket Item 98 at ¶ 18. But "[an] opposing party cannot defeat summary judgment by relying on allegations in the complaint[ or] conclusory statements." *Robinson v. Sanctuary Rec. Grps., Ltd.*, 826 F. Supp. 2d 570, 574 (S.D.N.Y. 2011) (citing *Gottlieb v. County of Orange*, 84 F.3d 511, 518 (2d Cir.1996)). Because Martinez has not cited any record evidence that Judge Roemer overlooked on this point, the Court agrees with Judge Roemer that Martinez's assertions about the deprivation of pain medication do not support his deliberate indifference claim. *See* Docket Item 95 at 28-29.

8

over the proper treatment does not create a constitutional claim." *Chance*, 143 F.3d at 703. "So long as the treatment given is adequate, the fact that a prisoner might prefer a different treatment does not give rise to an Eighth Amendment violation." *Id.* As Judge Roemer found, Martinez has not offered any evidence to refute the ECMC defendants' showing that the care provided by Hall and Dr. Tanaka was adequate. *See* Docket Item 95 at 21-22. So Martinez's argument that they should have performed an MRI does not create a genuine issue of material fact with respect to his Eighth Amendment claim.

And even if the failure to order an MRI showed that Hall and Dr. Tanaka provided "inadequate" care, nothing in the record even suggests that Hall or Dr. Tanaka acted with the requisite state of mind. That is, aside from his conclusory assertions about "all defendants," Martinez has not provided any evidence to tie his claims about Dr. Duquin's bias to Hall or Dr. Tanaka, who treated Martinez before he ever was seen by Dr. Duquin. Docket Item 95 at 3-5. Nor has Martinez provided any other evidence that Hall or Dr. Tanaka acted with a culpable state of mind. *See id.* at 27.

Judge Roemer therefore did not err in finding that Martinez failed to produce evidence sufficient for a reasonable jury to find for him on his Eighth Amendment claims against Hall and Dr. Tanaka. And for that reason, this Court grants the ECMC defendants' summary judgment motion with respect to those defendants.

**B.     Dr. Duquin**

Martinez's objections with respect to Dr. Duquin have more substance but fare no better: Again, he has failed to produce evidence sufficient to meet his Rule 56 burden.

### 1.     Objective Element

As noted above, Martinez argues that Judge Roemer overlooked evidence in the record supporting his claim that Dr. Duquin deprived him of adequate care.  More specifically, Martinez asserts that he "continually complained about different symptoms such as numbness, tingling, [and] pain [o]n [the] left side of [his] neck" and that a "bias-free doctor" would have made a more accurate assessment of his injury and performed the surgery he clearly needed.  Docket Item 98 at ¶¶ 23-24.  Martinez also notes that he provided Judge Roemer with a "citation to [an] article published by the doctor" that he would have hired but for lack of funds, and he adds that several physicians he encountered over the course of his treatment—including Dr. Holder—told him that surgery was required.  *Id.* at ¶¶ 16-17, 24, 28.  In fact, he says, when Dr. Holder "saw the deformation of [Martinez's] left arm, the first thing that came out of [his] mouth was: 'Those doctors' failure to perform surgery after this injury is a shame to medical practicing.'"  *Id.* at ¶ 17 (emphasis omitted).

None of that is enough to cast doubt on Judge Roemer's recommendation.  Indeed, although Martinez's deposition testimony includes many of the assertions he makes about his pain and the series of events following his injury, *see* Docket Item 82-9, Martinez did not submit an affidavit from Dr. Holder; in fact, he submitted no affidavits whatsoever.  In the absence of such affidavits, the hearsay statements of the physicians he says told him that surgery was required are insufficient to defeat summary judgment.  *See Patterson v. County of Oneida*, 375 F.3d 206, 219 (2d. Cir. 2004) ("[A] hearsay assertion that would not be admissible at trial if testified to by the [person making the assertion] is insufficient to create a genuine issue for trial."); *see also Johnson v. Conn. Dep't of Admin. Servs.*, 972 F. Supp. 2d 223, 244 (D. Conn. 2013) (collecting cases for

10

the proposition that "[o]nly admissible evidence need be considered by the trial court in ruling on a motion for summary judgment"), *aff'd*, 588 F. App'x 71 (2d Cir. 2015). And nothing else in the record—other than Martinez's own assertions—suggest that the medical care he received was inadequate.[8]

Martinez contends that as a *pro se* litigant—especially a litigant whose request for counsel was denied—he cannot be expected to know and comply with all "judicial procedures." Docket Item 104 at ¶ 3; Docket Item 98 at ¶ 29. It is true that "[b]efore summary judgment may properly be entered against a *pro se* litigant, the district court must ensure that the litigant is given notice as to the nature of a motion for summary judgment and as to his obligations to respond to such a motion." *Kepner v. Coleman*, 208 F.3d 203, 203 (2d Cir. 2000) (summary order) (citing *McPherson*, 174 F.3d at 280-82). But here, as required under Local Rule of Civil Procedure 56(b), both the state and ECMC defendants filed and served the "Notice to *Pro Se* Litigant Regarding Rule 56 Motion For Summary Judgment" with their summary judgment motions. Docket Items 82-5 and 83; *see McPherson*, 174 F.3d at 281 (explaining that "a [d]istrict [c]ourt need

---

[8] This Court agrees with Judge Roemer that Martinez's citation to a seemingly irrelevant article and Martinez's interpretation of a medical note written by physician's assistant Hall do not create a genuine issue of material fact here. *See* Docket Item 95 at 22-23. Indeed, Martinez submitted several medical records to this Court with his objections to the R&R, including that medical note and a record from Dr. Holder; Martinez says that those documents prove the inadequacy of the ECMC defendants' care. *See* Docket Item 99. But those records were previously submitted to this Court by the ECMC defendants with their motion for summary judgment, *see* Docket Item 82-6; Docket Item 94-1 at 21; Docket Item 82-7; Docket Item 94-2 at 18, 21, and do not provide any reason to revisit Judge Roemer's findings. That is, there is nothing in those records that corroborates what Martinez says Dr. Holder told him about the inadequacy of Dr. Duquin's care or, indeed, the inadequacy of any care or treatment Martinez was given. Giving Martinez the benefit of any inference that might be drawn from those records, they suggest, at most, that because the earlier treatment did not work, surgery was necessary—not that surgery should have been the first option.

11

not advise a *pro se* litigant as to the nature of summary judgment where an opposing party has already provided the litigant with the requisite notice" (citation omitted)). And as this Court explained above, a litigant's *pro se* status does not exempt him from "the normal requirements of summary judgment." *Castro-Ramirez*, 2014 WL 2440696, at *3-4.

To the extent that Martinez argues that it was error for Judge Roemer to rely on Dr. Voloshin's findings after denying Martinez's motion for funds to hire an expert—or otherwise contends that Judge Roemer's rulings during discovery missed the mark, *see* Docket Item 98 at ¶¶ 25, 28-29; Docket Item 93 (Judge Roemer's decision and order denying Martinez's motions for counsel and for funds to hire an expert witness)—the Court construes his arguments as attempts to appeal Judge Roemer's rulings on those matters. But the time for any such appeals had long expired by the time that Martinez filed his objections. *See* Fed. R. Civ. P. 72(a) (stating that "[a] party may serve and file objections to [a magistrate judge's] order [on a nondispositive matter] within 14 days after being served with a copy" and that "[a] party may not assign as error a defect in the order not timely objected to"). This Court thus declines to review Judge Roemer's decisions during discovery.

The only issue that gives this Court pause is Martinez's argument that because he is a prisoner with limited resources and little ability to hire a medical expert, Judge Roemer erred in considering the affidavit of the defendants' expert without giving Martinez the opportunity to hire his own. *See* Docket Item 98 at ¶ 28. And on another set of facts, this Court might well have denied the ECMC defendants' motion for summary judgment, at least with respect to Dr. Duquin, to allow for more discovery on

12

the issue of that doctor's care. But the Second Circuit has made clear that "mere medical malpractice is not tantamount to deliberate indifference *absent a showing of conscious disregard of a substantial risk of serious harm.*" *Darby*, 14 F.4th at 129 (emphasis added) (citation and internal quotation marks omitted); *see Chance*, 143 F.3d at 703. And while an expert affidavit on Martinez's behalf might create a battle of the experts, that still would not be enough to carry the day, especially because—for the reasons explained below, *see infra* Section I.B.2—Martinez has not shown that Dr. Duquin "conscious[ly] disregard[ed]" a substantial risk of serious harm. Darby, 14 F.4th at 129. Stated another way, an affidavit from a physician on Martinez's behalf might raise a claim for malpractice, but that is not enough to support a viable Eighth Amendment claim. .

In sum, this Court agrees with Judge Roemer that Martinez has not provided facts sufficient to overcome summary judgment on the objective prong of an Eighth Amendment claim for failure to provide medical treatment. But even if he had, Martinez's claim still would fail for the reasons that follow.

### 2. Subjective Element

Judge Roemer found that Martinez has failed to produce evidence sufficient to create a genuine issue of material fact as to the subjective element of an Eighth Amendment claim—that is, whether Dr. Duquin "kn[ew] of and disregard[ed] an excessive risk to [Martinez's] health or safety." *Darby*, 14 F.4th at 128. Again, this Court agrees.

As noted above, Martinez argues that Judge Roemer's analysis overlooked the fact that after Dr. Duquin learned of Martinez's life sentence, he recommended only

13

physical therapy rather than the surgery Martinez required. Docket Item 98 at ¶¶ 9, 23-24. But Martinez's assertion that Dr. Duquin based his medical decision on the length of the sentence Martinez was serving is just that—an assertion unsupported by any evidence other than Martinez's own say-so. And insofar as Martinez argues that Dr. Duquin's choice of treatment was the wrong one, "a difference of opinion about the proper course of treatment [alone] . . . does not demonstrate deliberate indifference to a substantial risk of harm." *See Darby*, 14 F.4th at 129; *Chance*, 143 F.3d at 703. Put another way, merely claiming that a doctor should have prescribed a different treatment is not enough to satisfy the subjective component of a deliberate indifference claim.

Courts have declined to find that similar sets of facts show a doctor's "deliberate indifference" sufficient to overcome motions for summary judgment. For instance, in *Rodriguez v. Gusman*, the plaintiff asserted that "[t]he [d]efendants should have prescribed standard medications for treating high blood pressure . . . , and ordered more extensive tests that can help detect a risk of stroke, including MRIs and Holter monitors"; their failure to do so, the plaintiff said, caused him to "suffer[] a hemorrhagic stroke" that left him "permanently disabled." 2023 WL 219203, at *1-2 (citation and internal quotation marks omitted). The Second Circuit nonetheless found that the defendants were entitled to summary judgment. More specifically, the court found that the plaintiff had "failed to establish the subjective component of his deliberate indifference claim" because "there [wa]s no genuine factual dispute that (1) [the plaintiff's] blood pressure was continuously monitored, (2) he was issued a blood pressure card, and (3) following his complaints, an electrocardiogram and bloodwork were ordered and produced normal results." *Id.* at *2. Thus, the court found that the

plaintiff "ha[d] not adduced evidence that any act or failure to act by the [d]efendants reflect[ed] a conscious disregard of a substantial risk that he would suffer a stroke." *Id.* And it further noted that "[i]nsofar as [the plaintiff] disagrees with the [d]efendants' medical judgment as to the proper course of treatment, that does not support a constitutional claim for deliberate indifference." *Id.*

Likewise, in *Ruiz v. Homerighouse*, 2003 WL 21382896 (W.D.N.Y. Feb. 13, 2002), the plaintiff brought a claim similar to the one Martinez brings here: that a doctor "fail[ed] to refer [him] for surgery [following a hand injury]—despite an alleged direction from the medical staff . . . to do so." *Id.* at *3-4. The court held that the doctor was entitled to summary judgment "for several reasons." *Id.* at *4. First, it noted that the doctor's failure to recommend surgery was "merely a difference of opinion with respect to a course of treatment, which [was] not [itself] actionable under section 1983." *Id.* Further, it found that the doctor's other conduct—including "provid[ing] medical treatment" such as "a splint and ace bandage, same-day referral to the emergency room, pain medication, physical therapy[,] and referral to an orthopedist"—simply "d[id] not constitute deliberate indifference." *Id.* (footnote omitted).

The same is true here. Like the plaintiffs in *Rodriguez* and *Ruiz*, Martinez was provided with a robust course of treatment that was responsive to his complaints, even if it was not the precise treatment he desired. *See* Docket Item 95 at 3-7. In fact, as Judge Roemer found, the undisputed evidence shows that Martinez reported that his injury improved as a result of the physical therapy that Dr. Duquin prescribed.[9] *See*

---

[9] Martinez says that while he reported improvement, his reports were untrue: He says that he was frustrated with receiving physical therapy instead of surgery and that he reported improvement simply because he wanted to end the tortuous therapy

15

Docket 95 at 5-6; Docket Item 82-9 at 38-40, 43-46.  Thus, as in *Rodriguez* and *Ruiz*, a disagreement about "the proper course of treatment"—even if that disagreement might create a genuine issue of material fact in a medical malpractice case, *see Darby*, 14 F.4th at 129; *Chance*, 143 F.3d at 703—alone is not enough to sustain a deliberate indifference claim.  *See Rodriguez*, 2023 WL 219203, at *2*; Ruiz*, 2003 WL 21382896, at *4; *cf. Goris v. Breslin*, 402 F. App'x 582, 585 (2d Cir. 2010) (summary order) (holding that plaintiff had not met the *objective* prong of his deliberate indifference claim despite his "alleg[ation] that an unspecified orthopedist indicated that [the plaintiff] needed surgery for his knee" where "there [wa]s no record evidence to support that assertion" and "[t]he record further show[ed] that [the plaintiff] responded well to physical therapy" (citation and internal quotation marks omitted)).

      Martinez says that Dr. Duquin's assessment was not just mistaken or negligent—it was biased and based on the long sentence Martinez is serving.  Docket Item 98 at ¶¶ 9, 23-24.  And the Second Circuit has explained that "allegation[s] of ulterior motives, *if proven true*, [may] show that the defendants had a culpable state of mind and that their choice of treatment was intentionally wrong and did not derive from sound medical judgment."  *Chance*, 143 F.3d 6at 704 (emphasis added) (finding that such allegations satisfied plaintiff's burden at motion to dismiss stage).  Therefore, and as Judge Roemer

---

process.  Docket Item 82-9 at 38-40, 43-46.  And he also says that at his last appointment with Dr. Duquin in 2016, he informed the doctor that "[the] therapy [wa]s not working" and "tried to convince him . . . to do the surgery."  *Id.* at 51.  But even if Martinez continued to suffer pain while reporting improvement—and even if he specifically asked for surgery—there is no evidence in the record to suggest that Dr. Duquin's failure to provide that preferred treatment was incorrect, much less that it reflected Dr. Duquin's "conscious awareness" of the risk of substantial harm to Martinez.  *See* Docket Item 95 at 6-7.  Indeed, nothing in the record suggests to the Court that it should reach a different result than did the courts in *Rodriguez* and *Ruiz*.

explained, "if [Martinez] could provide evidence that Dr. Duquin's recommendation against surgery was motivated by monetary incentives or other ulterior motives, this could sustain a finding of deliberate indifference."  Docket Item 95 at 28 (citing *Chance*, 143 F.3d at 703-04).

But this Court agrees with Judge Roemer that Martinez has provided no such evidence.  *Id.*  Instead, Martinez offers merely his "bald assertion[]" that Dr. Duquin should have recommended surgery—and in fact would have done so but for learning about Martinez's prison sentence.  *See Castro-Ramirez*, 2014 WL 2440696, at *4.  And such a conclusory assertion, without more, is simply not enough to create a genuine issue of material fact.  *See id.*; *Sereika v. Patel*, 411 F. Supp. 2d 397, 409 (S.D.N.Y. 2006) (granting summary judgment prior to discovery when "[the p]laintiff's assertion that [the d]efendants based medical treatment decisions on cost or other inappropriate concerns [wa]s entirely unsupported in the record" and noting that "[w]hile a court has an obligation to read a *pro se* party's supporting papers liberally, a *pro se* litigant's 'bald assertions,' completely unsupported by evidence, are not sufficient to overcome a motion for summary judgment" (alteration and citations omitted)).

In sum, Martinez "has presented no evidence that his diagnosis and treatment were so devoid of sound medical basis or far afield of accepted professional standards as to raise an inference of deliberate indifference."  *Green v. Shaw*, 2019 WL 1427448, at *8 (D. Conn. Mar. 29, 2019), *aff'd*, 827 F. App'x 95 (2d Cir. 2020).  And because this Court has determined that Martinez has not met his burden to show that any of the ECMC defendants were deliberately indifferent to his serious medical needs in violation of the Eighth Amendment, Martinez cannot assert any constitutional claims against the

17

state defendants based on their failure to remedy that alleged violation.  *See Raspardo v. Carlone*, 770 F.3d 97, 127 (2d Cir. 2014) ("Liability cannot be imputed to [a supervisory official] without an underlying constitutional violation.").

This Court therefore agrees with Judge Roemer that "based on the record, . . . there are no genuine issues of material fact and [Martinez] cannot support [his] claim of deliberate indifference to medical needs in violation of his constitutional rights."  *See* Docket Item 95 at 29.  The defendants' motions for summary judgment therefore are granted.

## II.   PERSONAL INVOLVEMENT

Finally, Martinez objects to Judge Roemer's recommendation that the state defendants also are entitled to summary judgment because they were not personally involved in any constitutional violation.  *See* Docket Item 98 at ¶ 38.  Again, this Court agrees with Judge Roemer.

"To establish a defendant's individual liability in a suit brought under [section] 1983, a plaintiff must show the defendant's personal involvement in the alleged constitutional deprivation."  *Kravitz v. Purcell*, 87 F.4th 111, 129 (2d Cir. 2023) (alteration, citation, and internal quotation marks omitted).  In other words, "the plaintiff must directly plead and prove that 'each [g]overnment-official defendant, through the official's own individual actions, has violated the Constitution.'"  *Tangreti v. Bachmann*, 983 F.3d 609, 612 (2d Cir. 2020) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009)).  Martinez says that he has shown that the state defendants were personally involved because he "properly alerted" them to the "denial of medical treatment" he experienced but they nonetheless "failed to prevent the [ECMC defendants'] discrimination."  Docket

Item 98 at ¶ 38. In fact, he says, Noeth and Michalek sent him a letter incorrectly "stating that he did not need surgery." *Id.*

Again, this Court already has determined that the ECMC defendants did not violate Martinez's constitutional rights. Moreover, as Judge Roemer explained at greater length, "[a] supervisory official's receipt of a letter or denial of a grievance complaining of a constitutional violation does not generally constitute personal involvement on the part of the official." Docket Item 95 at 31 (citing *Jordan v. Gifford*, 2022 WL 3106965, at *26 (D. Conn. Aug. 4, 2022)). "Further, 'the review, denial[,] or affirmance of a denial of a grievance is insufficient to establish personal involvement' of a supervisor in the denial of a constitutional right." *Id.* (citing *Lopez v. Chappius*, 2021 WL 859384, at *2 (W.D.N.Y. Mar. 8, 2021)). Martinez does not provide any reason why that general rule does not apply here, *see* Docket Item 98, and this Court can find none. The state defendants therefore also are entitled to summary judgment for lack of personal involvement.

### III. CLAIMS AGAINST TREANOR

As noted above, Treanor—a physician's assistant at ECMC and the seventh defendant—was not served and has not appeared in this action. *See supra* note 3. Because Judge Roemer recommended that this Court grant the motion for summary judgment filed by the ECMC defendants, he also "recommend[ed] that [this] Court dismiss [Martinez's] claims against Treanor." Docket Item 95 at 33 n.8. Martinez does not specifically object to—indeed, he does not even mention—the recommended dismissal of his claims against Treanor. *See* Docket Item 98. Therefore, and in light of its determination that the other defendants are entitled to summary judgment, this Court

also adopts Judge Roemer's recommendation to dismiss Martinez's claims against Treanor.

## **CONCLUSION**

For the reasons stated above and in the R&R, the defendants' motions for summary judgment, Docket Items 76 and 82, are GRANTED, and Martinez's claims against Treanor are DISMISSED. The Clerk of the Court shall close this case.

Martinez must file any notice of appeal with the Clerk's Office, United States District Court, Western District of New York, **within 30 days of the date of judgment in this action**.

SO ORDERED.

Dated: November 5, 2024
Buffalo, New York

      */s/ Lawrence J. Vilardo*
LAWRENCE J. VILARDO
UNITED STATES DISTRICT JUDGE